214

755 S.E.2d 107

**In the Matter of Philip Earle WILLIAMS, Respondent.**

Appellate Case No. 2014–000060.

No. 27361.

Supreme Court of South Carolina.

Submitted Jan. 27, 2014.

Decided March 5, 2014.

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina C. Todd, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Harvey MacLure Watson, III, of Ballard Watson Weissenstein, of West Columbia, for respondent.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to disbarment with conditions as set forth hereafter. He requests the disbarment be made retroactive to March 15, 2013, the date of his interim suspension. *In the Matter of Williams*, 403 S.C. 362, 743 S.E.2d 733 (2013). We accept the Agreement and disbar respondent from the practice of law in this state. We deny respondent's request to impose the disbarment retroactively to the date of his interim suspension. The facts, as set forth in the Agreement, are as follows.

### *Facts*

### *Matter I*

Respondent drafted a will for Client A. When the will was executed, Client A was in the hospital and unable to speak or sign his name. Respondent named himself as personal repre-

sentative in the will, entitling him to receive a 5% statutory commission. Respondent served as both a witness and the notary to the execution of the will.

Although respondent engaged in a business transaction with Client A by drafting the will and naming himself personal representative, respondent did not explain to Client A in writing that he would collect a fee or commission for serving as the personal representative, did not tell Client A in writing of the advisability of seeking independent legal counsel, and did not provide Client A with a reasonable opportunity to seek independent legal counsel.

Client A died shortly after the execution of the will and, in accordance with the will, respondent was appointed as the estate's personal representative. The will provided that a named church (Church) was to receive $100,000 and that four members of a family (Beneficiaries) were to share equally in the residuary of the estate.

The estate had $1,253,960.86 in liquid assets. Respondent placed the bulk of the estate's funds into a dedicated trust account and, except for paying himself $26,000, his handling of the funds in that account is not at issue. However, his handling of the first $300,000 he received in estate funds was largely improper.

In August of 2010, respondent deposited the $300,000 into a trust account he had with Branch Bank and Trust (BB & T). Before the deposit, the account balance was $821.90; respondent did not provide records to ODC sufficient to identify the owner(s) of this money. After the $300,000 deposit and before making any further deposits, respondent issued: 1) 73 checks to himself and one check made payable to cash, totaling $227,073.50; 2) a $4,448.00 check to his relative; 3) two checks totaling $10,119.19 to an individual in connection with an unrelated estate; 4) a $5,630.40 check to a bank for reasons not related to the Estate of Client A; 5) two checks totaling $15,000.00 to an individual for reasons unrelated to the Estate of Client A; 6) a $500.00 check to a beneficiary of the Estate of Client D;[1] 7) two checks totaling $5,663.49 to John Doe,

---

1. *See* Matter IV.

one of the residuary devisees of the Estate of Client D; and 8) a $325.00 check for an expense of the Estate of Client B.[2]

Respondent also disbursed $32,444.96 for legitimate expenses of the Estate of Client A from the trust account. By the end of January 2012, the balance in the BB & T trust account fell to $16,499.04.

On February 1, 2012, respondent deposited $126,493.30 belonging to the Estate of Client B into the BB & T trust account. This was the first deposit since the $300,000 deposit belonging to the Estate of Client A. Respondent continued to make improper payments, most to himself, without regard to proper handling or accounting of the funds of either estate.

During the investigation of this matter, respondent attempted to justify his removal of funds belonging to the Estate of Client A by claiming that one or more of the Beneficiaries had agreed to pay him a legal fee of 15% of the liquid assets of the estate. Respondent had no such fee agreement. In fact, after he had proposed this fee to the Beneficiaries, the Beneficiaries complained to the probate court and hired counsel. A 15% fee would have been approximately $188,000, an unreasonable amount in light of the factors in Rule 1.5, Rule 407, RPC, and far less than the sum respondent had already removed from the estate.

Because of respondent's failure to make disbursements and close the estate, the probate court held a hearing on October 19, 2012. At the hearing, the probate court addressed respondent's proposed 15% fee and respondent agreed to accept the 5% statutory commission as his total compensation for his work on the estate. At the hearing, the Beneficiaries' attorney demanded a full accounting of all estate funds and respondent agreed to file an interim accounting.

On October 24, 2012, respondent filed two interim accountings with the probate court, one for each of the bank accounts. The interim accounting for the dedicated trust account correctly reflected disbursements to date, including the $26,000 paid to respondent in legal fees. The interim accounting for the funds in the BB & T trust account, however, was largely inaccurate and misleading. Respondent correctly reported

---

2. *See* Matter II.

the estate funds deposited into the account and the legitimate expense paid from the account, but did not report any of the disbursements he made to himself from the account. Moreover, respondent falsely reported that he held $267,555.04 in the BB & T trust account for the estate when the true balance was $50,394.86, the majority of which belonged to the Estate of Client B. Respondent did not provide an accounting of all disbursements as demanded by the Beneficiaries' attorney.

As a result of his interim accounting and proposed distribution, the probate court directed respondent to make disbursements to the devisees. Respondent was specifically ordered to pay Church the $100,000 it was due within two business days. Because of his improper removal of funds from the account, however, there was not enough money to make the full distributions under his proposal.

After considerable delay and a deposit into his BB & T trust account of funds belonging to another client,[3] respondent paid three of the Beneficiaries but made no payment to Church and shorted one of the Beneficiaries $125,478.12. Respondent sent the partial payment to this beneficiary with a letter of apology seeking the beneficiary's "confidentiality" and "mercy."

Thereafter, the probate court removed respondent for failure to obey court orders. Both the probate court and the Beneficiaries' attorney filed complaints against respondent.

ODC subpoenaed respondent's file for the Estate of Client A and the records for respondent's trust accounts since the date of Client A's death. In response to the subpoena, respondent produced bank statements for his BB & T trust account; he did not produce receipt and disbursement journals, client ledgers, or reconciliation reports for that account and produced no records for his real estate trust account. Respondent did not produce his file for the Estate of Client A.

During an interview with ODC, respondent falsely testified that the two deposits made into his trust account after the $300,000 deposit for the Estate of Client A were earned legal fees for the Estate of Client B and another client C rather than assets of the two clients. During the interview, respondent testified the account contained $95,000, almost enough to

---

3. *See* Matter III.

pay Church, and contended he had protected the funds due Church despite clear evidence that most, if not all, of the $95,000 came from the two intervening deposits. Respondent also admitted it was common practice for him to serve as both attorney and personal representative for estates and his standard fee for his work on such estates was 15% of the estate's liquid assets.

Following the interview, respondent paid Church $90,000 from his trust account, $10,000 less than Church was to receive under the will but far more than the funds on deposit for the Estate of Client A. Respondent also provided ODC with copies of bank statements for his real estate trust account, but did not provide any other records for the account despite having testified during the interview that he maintained proper records for the account.

## Matter II

In September of 2006, respondent drafted a will, power of attorney, and health care power of attorney for Client B. At the time, Client B was in a nursing home and respondent named himself Client B's attorney-in-fact as well as personal representative of Client B's estate. The handling of Client B's finances between September 2006 and Client B's death in 2011 have been questioned, but records are unavailable and respondent has no records of any accountings to Client B.

After Client B's death, respondent was entrusted with $126,493.30 belonging to the estate. Respondent placed these funds into his trust account. Although he paid some legitimate estate expenses from these funds, he used the majority of the funds for his own purposes. Respondent later received $2,000 in estate funds that he did not deposit into his trust account, use for estate expenses, or preserve for the estate's beneficiaries.

Client B's will provided a $100 gift to each of his five children with the remainder of his estate to be shared equally by his grandchildren. Respondent made no distributions to Client B's children or grandchildren. The probate court requested an accounting and proof of payment to the beneficiaries, but respondent produced neither.

Unaware of respondent's failure to safeguard the estate's funds, Client B's daughter filed a complaint alleging respondent had not worked diligently on her father's estate and had not communicated well with the beneficiaries. Respondent failed to report Client B's ownership of a small amount of stock and a parcel of real estate on the inventory and appraisement, failed to pay taxes on the property, and did not redeem the property until five months after it was sold at a tax sale. He also failed to timely close an unneeded storage unit, causing the estate to incur additional expenses.

### Matter III

In November of 2012, Client C, the personal representative of an estate, entrusted respondent with $82,488.29 of estate funds which respondent placed into his BB & T trust account. Although respondent paid some legitimate expenses of the estate with these funds, the majority of the funds were disbursed improperly. Respondent also received rent money on behalf of the estate which he did not place into any account or otherwise safeguard and for which he cannot account. Respondent owes the estate $77,451.02.

### Matter IV

Respondent drafted a will for Client D and named himself as the successor personal representative. In addition to specific gifts of real and personal property, the will provided for a $1,000 devise and four devises of $500 each. Client D left the residuary of his estate to two relatives, John Doe and Jane Doe.

Upon Client D's death, respondent was appointed personal representative. Respondent deposited $9,563.86 into the account he opened for the estate. He paid $285 in legitimate estate expenses from the estate account, but did not pay any of the devisees from this account or the sole approved estate creditor from the account. Instead, respondent used the remainder of the money for his own purposes, writing himself checks and receiving the balance in the account when the account closed.

Respondent paid residuary beneficiary John Doe $5,663.49 and one beneficiary $500, but made these payments from his BB & T trust account which held no funds for this estate.

Respondent failed to distribute four of the five bequests as instructed in the will.

Although respondent did not pay the four bequests, he told the probate court in a letter that he was trying to obtain receipts and releases from three of the beneficiaries. He provided the probate court with a receipt and release from the fourth beneficiary, a community center. The court rejected this receipt and release because it indicated the community center had received a donation from Client D prior to his death rather than a cash bequest under the will. Further, when he applied to settle the estate, respondent indicated he had only paid himself $500 from the estate's funds. He also incorrectly reported to the probate court the sum he had paid to John Doe. In addition to the devisees who received no funds, respondent owes John and Jane Doe an additional $115.37.

### *Matter V*

On March 15, 2013, respondent was placed on interim suspension by this Court and Stephen G. Potts, Esquire, was appointed as Attorney to Protect Clients' Interests. *Id.* On the day of his interim suspension, respondent received a telephone call from the office of the Clerk of this Court advising of his suspension and instructing him to cease practicing law.

In spite of this notice and instruction, for approximately two weeks thereafter, respondent answered and returned telephone calls from his law office telephone and kept or attempted to keep existing appointments with active clients. Respondent acknowledges his action was improper because he did not clearly communicate his suspended status to callers and clients and attempted to continue to provide legal counsel instead of restricting communication to historical information for the purpose of assisting clients in finding successor counsel.

After his interim suspension, respondent met with one client and presented the client with a document instructing an insurance company how to disburse the client's large settlement. Respondent had backdated the document to the date of his interim suspension and, after the client executed the

document, offered to mail it for the client. Respondent attempted to negotiate a higher fee with the client during the meeting and, after the meeting, confirmed he had mailed the document.

Respondent also accepted paperwork and an earnest money check for a residential real estate closing from a realtor. When Mr. Potts emailed respondent and asked about the closing, respondent returned the papers and check to the realtor rather than surrendering them to Mr. Potts.

Respondent did not fully cooperate with Mr. Potts. Among other responsibilities, Mr. Potts was charged with taking control of respondent's trust and other office accounts and disbursing the files to active clients. Respondent did not surrender all of his active files to Mr. Potts in a timely fashion, choosing to hold onto problem files or place them with inactive files. Although he did provide some financial records to Mr. Potts, he did not initially surrender all of his records.

Nearly three months after he was placed on interim suspension, respondent appeared at the drive-thru window of Community First Bank where he maintained several firm accounts and personal accounts. Respondent asked the teller to transfer funds from one of his law firm accounts to a personal account. Before he identified the firm account or provided the amount he wished to transfer, the teller advised he could not make any transactions out of the law firm accounts without Mr. Potts' authorization. Respondent told the teller he was keeping Mr. Potts informed of all of his activities, but acquiesced to the teller's refusal. He then presented the teller with a deposit slip for a personal account and a $350 check made payable to himself. Only later did the bank staff realize the $350 check was drawn on respondent's trust account with First Citizens Bank. After learning that First Citizens would not honor the check, bank staff called respondent and told him the deposit would not be honored. Respondent had not notified Mr. Potts or ODC of the existence of the First Citizens trust account and had not surrendered the checks, bank statements, or other records to Mr. Potts.

### Law

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule

407, SCACR: Rule 1.5 (lawyer shall not charge or collect unreasonable fee); Rule 1.8(a) (lawyer shall not enter into a business transaction with client unless specified safeguards are followed); Rule 1.15 (lawyer shall safeguard funds of clients and third parties); Rule 3.3 (lawyer shall not make false statement of material fact to tribunal); Rule 3.4(a) (lawyer shall not obstruct party's access to evidence or conceal document of evidentiary value); Rule 3.4(c) (lawyer shall not knowingly disobey obligation under rule of tribunal); Rule 5.5 (lawyer shall not engage in unauthorized practice of law); Rule 5.7 (lawyer is subject to Rules of Professional Conduct when providing law related services in circumstances that are not distinct from lawyer's legal services); Rule 8.1(a) (lawyer shall not make false statement of material fact to disciplinary authority); Rule 8.1(b) (lawyer shall not knowingly fail to respond to disciplinary authority's inquiries or requests); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice). Respondent further admits he violated Rule 417, SCACR.

Respondent also admits his conduct is grounds for discipline under the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct or other rules regarding professional conduct of lawyer); Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute administration of justice or to bring courts or legal profession into disrepute or conduct demonstrating unfitness to practice law); and Rule 7(a)(7) (it shall be ground for discipline for lawyer to willfully violate valid court order issued by a court of this state).

### Conclusion

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law in this state.[4] In addition, we impose the following conditions as set forth in the Agreement:

---

4. As noted above, the Court denies respondent's request to impose the disbarment retroactively to the date of his interim suspension.

1) within thirty (30) days of the date of this opinion, respondent shall enter into a restitution plan with the Commission on Lawyer Conduct (the Commission) to pay restitution totaling $344,037.81 to the nine individuals and entities as stated in the Agreement for Discipline by Consent and the costs incurred by ODC and Commission in the investigation and prosecution of this matter; [5] respondent shall not apply for readmission until he has fully reimbursed each of these individuals and entities;

2) respondent shall not apply for readmission until he has fully reimbursed the Lawyers' Fund for Client Protection for all disbursements made on his behalf; and

3) respondent shall not apply for readmission until he has taken the following steps to identify all injured parties and has made full restitution to all injured parties:

i.) respondent shall hire a certified public accountant to perform a six-year forensic accounting and audit of all trust accounts, operating accounts, and estate accounts over which respondent had control; and

ii.) the certified public accountant issues a report which identifies all accounts reviewed and the dates of the records reviewed, identifies all injured parties and the total loss for each, and provides reasonable assurance that all injured parties have been identified.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.

---

5. The amount which shall be paid to the Estate of Client B may be reduced by the amount of any legitimate expense respondent proves was made on behalf of the estate.